UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARSHALL V. MAURO,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

CIVIL ACTION NO. 07-12095

DISTRICT JUDGE SEAN F. COX

MAGISTRATE JUDGE VIRGINIA MORGAN

**REPORT AND RECOMMENDATION**

This is an action for judicial review of the defendant's decision denying plaintiff's application for supplemental security income (SSI). Plaintiff filed for SSI in 2003, pursuant to 20 C.F.R. § 416.1429, and alleges disability since 1992 when he was age 10 due to the residuals of a cancerous tumor.[1] Plaintiff was 21 at the time of the application for SSI. He had a high school education, was taking some college classes, is able to communicate in English, and has past relevant work at McDonald's as a fast food cook. The defendant found that plaintiff did have evidence of substantial gainful employment and that he had worked since 1992. However, plaintiff was not able to perform his past relevant work. Defendant further found that despite his impairments, plaintiff could perform a limited range of sedentary work which existed in

[1]Although SSI is not payable prior to the month following the month in which the application was filed, the ALJ considered the entire medical history consistent with 20 C.F.R. § 416.912(d).

significant numbers. Plaintiff contends that this finding is not supported by substantial evidence. Defendant contends otherwise. For the reasons set forth in this Report, it is recommended that this matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), including, but not limited to, a reassessment of plaintiff's credibility, together with an explanation of the basis for the credibility determination reached, a reassessment of plaintiff's RFC, the taking of additional testimony from a VE and a hearing before a different, independent ALJ. The new ALJ may conduct such other proceedings and consider such additional evidence as he or she may deem appropriate, including further inquiry regarding the $12,000 income allegedly earned by plaintiff.

**I. The application process for SSI is essentially equivalent to that for Title II disability benefits.**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims. 20 C.F.R. § 416.920. In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

A. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan,

109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273. A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).

## II. Background

At the time of the decision, plaintiff was 25 years old and living with his parents in Freeland, Michigan. Plaintiff had a hearing before an ALJ who issued an unfavorable decision. The ALJ found that despite plaintiff's severe impairments of scoliosis, back pain, history of Ewing's tumor, surgery, chemotherapy, shortness of breath due to lung resection, and cardiomyopathy he does not meet the Listings and has the residual functional capacity to perform sedentary work activities which require intermittent standing and walking and lifting limited to ten pounds or less. He found that the plaintiff's statements were not entirely credible.

Plaintiff's medical issues began when he was ten years old when he had a cancerous tumor removed along with three ribs and part of his left lung. He was treated primarily at Children's Hospital in Detroit and still sees several doctors. (Tr. 51) Subsequently, he developed scoliosis, resulting in a 36 degree curvature of his upper spine. That condition required surgery in 1995 for a rod to be fused to his spinal vertebra. Plaintiff also developed an

enlarged heart, secondary to the side effects of chemotherapy for the cancer. He has muscle spasms in his back and is in constant pain from both sides of his shoulders to his lower back. According to his treating physician Dr. Cavendish, who has treated plaintiff since he was ten, plaintiff is required to rest frequently during the day as a result of his back problems. In addition, plaintiff has depression, and has trouble sitting for a long period of time. (Tr. 188-190)

Plaintiff reported that he worked at McDonald's for a brief period of time in 1998.[2] He prepared burgers, cleaned the kitchen and washed dishes. He quit because he was physically unable to do the job duties. (Tr. 47) He can walk 50 to 100 yards, drive a car, do some cleaning, ironing, and laundry, and take care of his pets. (Tr. 59, 62) He watches TV and goes to college. (Tr. 60) Exertional activities make his pain worse. (Tr. 61) Reports of daily activities show that he takes his pain medications, takes naps, goes to classes and studies. (Tr. 77) Plaintiff reported that he was on Flexeral and Tylenol #3, has been seen for liver problems at Saginaw Hospital, and denied current psychiatric problems. (Tr. 79)

On March 3, 2004, plaintiff was seen for evaluation of his heart problem, lung problem, back problem and chest pain. (Tr. 80-82) The examination confirmed his history, his enlarged heart and decreased injection fraction, his partial lung resection, his past liver biopsy, and absence of reflexes to the legs as a result of Adriamycin therapy.

---

[2]A social security report indicates that plaintiff received $12,000 income from Berber Construction in Metamora, MI in 2004 or 2005. Plaintiff submits that this is an error and that he did not work there. The ALJ found it to be evidence of substantial gainful activity by plaintiff. Because SSI would not have been payable during this time period, it is not relevant in assessing plaintiff's entitlement to benefits.

A residual functional capacity assessment determined that plaintiff could list or carry 20 pounds, sit six hours and stand six hours, only occasionally push/pull, and only occasionally climb stairs. (Tr. 85-90) He had various environmental restrictions as well.[3]

There are extensive office and nursing notes and indicating care by several doctors. Some of his physicians no longer follow him because he is now an adult. (Tr. 105) Plaintiff has been treated frequently for his bone and rib pain. The placement of the rods is stable although one of the wires is inferiorly broken. A bone scan showed levo-convex scoliosis of the left spine. (Tr. 146)

In addition to his impairments and ongoing complications, he also has received treatment for a series of injuries. These are unexplained in the record but appear to be of concern. For example, in 1997, he caught his hand in a table saw, then the bandages caught on fire from the toaster. (Tr. 112) In 1993, he fell and sprained his right wrist. (Tr. 114) In July, 2006, plaintiff was seen for rib pain after being kicked in the ribs. (The perpetrator is not identified in the records.) (Tr. 97, 142) He was found to have several old rib fractures but there was no acute process and he was discharged in stable condition. (Tr. 97)

There are extensive office notes showing that plaintiff was treated for a variety of other conditions emanating from his impairments. He had a frozen shoulder and chest wall pain in September 2004. (Tr. 100) In August 2004 he had back pain after a fall with possible rib fracture. He has had stomach aches, heart issues, and other concerns. In February, 2004, lung x-

---

[3]This lifting limit and the ability to perform the full range of light work, limited by environmental restrictions, seems inconsistent with the medical evidence. Apparently, the ALJ agreed as the determination limits plaintiff to sedentary work.

rays showed an apparent lung malignancy. However, on further testing, no evidence suggesting metastatic disease was found. (Tr. 136)

A DDS consultation form from March 15, 2004 reviewed findings from the medical evaluator. Plaintiff did not have signs of congestive heart failure on examination. His statements seemed credible to the reviewer, Dr. John Bartone. (Tr. 96)

Plaintiff had a cardiac evaluation with Dr. Ravidan in May 2006 when he had a rapid heartbeat. The EKG showed voltage criteria for LVH and minor ST changes. (Tr. 137) Further testing was recommended. (Tr. 138) A 24-hour Holter monitor showed episodes of sinus tachycardia and supraventricular tachycardia up to 190 beats per minute. (Tr. 135) Other studies confirmed the palpitations as well. Id. He was then seen in the emergency room on July 20, 2006, due to being kicked in the ribs.

His treating physician Dr. Cavendish submitted a deposition detailing plaintiff's impairments and prognosis. (Tr. 182-194) He has treated plaintiff since 1989. Other doctors who treated plaintiff included Dr. Tom Damuth and Dr. Ed Austin. Dr. Austin's biopsy determined that the chest tumor was a sarcoma and plaintiff was referred to Children's Hospital where he treated with Dr. Cushing. (Tr. 187) The course of chemotherapy included sepsis and other complications. Id. Two years later the scoliosis was detected as well as the dialated cardiomyopathy secondary to chemotherapy and decreased injection fraction. (Tr. 188) Plaintiff had both chemo and radiation therapy for his cancer. (Tr. 193) As a result of his conditions and the treatment for them, plaintiff has difficulty sitting for long periods of time and some depression. (Tr. 188) Physical activity and exertion is limited to about five to ten minutes. He

needs to lie down frequently. He is attending college, but Dr. Cavendish is not sure what plaintiff is studying. However, he does know that plaintiff is unable to take a full load and he is still trying to get through the program he selected. (Tr. 189-190) Plaintiff recently underwent a series of epidural injections which did not give him relief. Plaintiff is not a malingerer; indeed, he seems to downplay his impairments, at least to others. (Tr. 191) He tries to do things that he should not do in the first place but does so in order to try and fit in. (Tr. 191) Plaintiff has fluttering heart pain, rapid heart rate, and pain with any lateral bending of his body. In addition, he cannot use his arm above the horizontal plane and as a result of his treatments, he has increased sensitivity to touch on his skin. In Dr. Cavendish's opinion, plaintiff is disabled from full time gainful employment. (Tr. 190)

## III. Legal Analysis

### A. ALJ's Evaluation of Plaintiff's Complaints of Pain

Plaintiff claims the ALJ did not properly evaluate his complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

Plaintiff has demonstrated a medical condition, namely rib removal, removal of part of his left lung, scoliosis with rod placement, and cardiomyopathy secondary to chemotherapy which is well documented in the record and could reasonably be expected to give rise to his disabling pain. His reports of muscle spasms in his back and constant pain which is relieved by lying down five to ten times a day for five to ten minutes (Tr. 233) is consistent with that condition. In addition, plaintiff has experienced some depression related to his condition. His treating physician Dr. John Cavendish reports that the need to lie down and the depression are the result of plaintiff's physical problems and cause him to be disabled from full time gainful employment. In sum, the court finds that the ALJ failed to appropriate assess the plaintiff's complaints of pain.

**B. Treating Physician Opinion**

Plaintiff claims that the ALJ erred in failing to accord controlling weight to the opinion of his long time treating physician Dr. John Cavendish, who appears to have followed him well into his adulthood. As the Sixth Circuit stated in Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a "treating source's" opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record. See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

"While the ALJ was not bound by the opinions of plaintiff's treating physicians, he was required to set forth some basis for rejecting these opinions." Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987), citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1987); Jones v. Heckler, 760 F.2d 993, 997 (9th Cir. 1985).

In determining whether there is substantial evidence, the testimony of a treating physician must ordinarily be given substantial weight unless there is good cause to do otherwise. The Secretary is required to indicate what weight was given to the treating physician's testimony

and reasons for not giving it substantial weight. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Failure to do so requires either reversal or remand because such failure constitutes use of an erroneous legal standard. Id. at 1053; Shelman, 821 F.2d at 321.

Dr. Cavendish is indeed plaintiff's long term treating physician. The Social Security Regulations state that term "[t]reating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. As such, plaintiff has established an "ongoing treatment relationship" such that Dr. Cavendish may be considered a "treating source" within the meaning of the regulations. See, e.g., Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983)(doctor who examined claimant only once or twice not a treating source).

Given the deposition, the substantiated cancer, scoliosis, spinal surgery, chemotherapy, and other treatment, Dr. Cavendish appears to have based his assessment of plaintiff's inability to perform full-time work upon objective medical evidence and his independent medical assessment of plaintiff's condition. Further, the findings are consistent with other examining physicians who saw him for cardiomyopathy, fluttering heart pain, and epidural injection therapy.

In addition, the hypothetical was flawed in that it assumes that plaintiff could stand and walk two hours in an eight hour day, sit six of eight hours and did not assume a need to lie down. Thus, the answers by the VE cannot form the basis for the decision by the ALJ.

Plaintiff also points out that the ALJ is supposed to be an independent fact finder and has a duty to fully and fairly develop the record. Johnson v. Secretary of HHS, 794 F2d 1106, 1111 (6th Cir. 1986). There were several exchanges initiated by the ALJ regarding past or present troubles with the law, what were plaintiff's favorite television programs, what movies had he recently seen, what type of music the plaintiff enjoyed, and what books he read for pleasure. Plaintiff points out that these questions are irrelevant and that plaintiff's responses were not ones which curried favor with the ALJ. In addition, plaintiff points out several instances of the ALJ's personal bias and animosity, which he describes as "very subjective negative mindset about this plaintiff." The ALJ stated: You recognize that other people your age have had the same problems?. . and they're working. You do recognize that?" (Tr. 226-228) Plaintiff has demonstrated that the ALJ was not neutral and his comments cast doubt upon the integrity of the determination.

In sum, the court concludes that the ALJ erred in declining to accord special deference to the findings and opinions of Dr. Cavendish under the treating physician rule, that the ALJ demonstrated bias, and that there was not substantial evidence to support the determination that plaintiff retained the residual functional capacity to perform full-time work, even at the sedentary level.

The question then becomes whether the matter should be remanded for further proceedings or whether an immediate award of benefits is warranted. The court is not persuaded that all essential factual matters have been resolved such that an immediate award of benefits would be proper. See Faucher v. Secretary of HHS, 17 F.3d 171, 176 (6th Cir. 1994)("If a court

determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."). Rather, questions remain regarding plaintiff's credibility, his RFC in light of his ability to concentrate due to pain and his success in college studies, and his ability to engage in other work that exists in significant numbers in the national or regional economy given the need to lie down to relieve pain several times a day. Accordingly, it is recommended that this matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), including, but not limited to, a reassessment of plaintiff's credibility, together with an explanation of the basis for the credibility determination reached, a reassessment of plaintiff's RFC, the taking of additional testimony from a VE and a hearing before a different, independent ALJ. The new ALJ may conduct such other proceedings and consider such additional evidence as he or she may deem appropriate including further inquiry regarding the $12,000 income allegedly earned by plaintiff.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: December 21, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on December 21, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan